GUSTAVUS GALLEGLY *v.* KANSAS CITY, MEMPHIS AND BIRMINGHAM RAILROAD COMPANY.

1. RAILROADS. *Passenger train. Conductor. Code* 1892, § 3563. *Conservator of the peace.*

    A conductor of a railroad passenger train, under Code 1892, § 3563, providing that if any passenger be guilty of disorderly conduct, etc., upon any passenger train the conductor may stop the train, etc., and eject him, is a conservator of the peace.

2. SAME. *Duty to protect passengers.*

    It is the duty of the conductor of a railroad passenger train, under the law, Code 1892, § 3563, to protect the passengers not only from assault but from insult, blasphemy, obsenity and unseemly conduct.

3. SAME. *Conductor's rights. Self-defense.*

    A conductor of a railroad train has an equal right with private citizens to defend himself from unprovoked assaults and to resent gross and wanton insults.

FROM the circuit court of Marshall county.

HON. PERRIN H. LOWREY, Judge.

Gallegly, the appellant, was plaintiff, and the railroad company, appellee, was defendant in the court below. From a judgment in defendant's favor, the plaintiff appealed to the supreme court.

The evidence for plaintiff was substantially as follows: Plaintiff, who was a railroad contractor for the Illinois Central Railroad Company, boarded defendant's passenger train at Holly Springs, Miss., to go to Memphis, Tenn. He did not purchase a ticket, and when the conductor came for his fare he gave him money in excess of his fare, at the same time handing him a pass which plaintiff had over the Illinois Central Railroad; plaintiff testifying that he thought the conductor, as a courtesy among railroad men, might pass him, and return his money. That the conductor did not have the change, and went with the pass and the bill handed him by plaintiff, and in a short while a brakeman brought plaintiff his change, but not the pass. That the conductor afterwards came back through the car where plaintiff was—the smoker—when plaintiff asked him for the pass. That the conductor denied having received the pass, and plaintiff repeated that he had given it to him, whereupon the conductor called plaintiff a liar, and plaintiff then struck him, and a fight ensued, and they were separated by those present. That at the next station the conductor telegraphed ahead, and had plaintiff arrested and taken off the train. That he was held by the officer until the conductor telegraphed back that no charge would be made against him, and he was then released.

The evidence of defendant was to the effect that, when plaintiff asked the conductor for the pass, the conductor told him that he had not had it, and, after insisting for some time that the conductor did have it, plaintiff became very abusive, and called the conductor a damned liar, and repeated this several times, and applied various obscene and profane epithets to the conductor, and the conductor then said, "If you say that I have got your pass, you are a damned liar," when the fight began, and they were separated, and that plaintiff went to his satchel

and got his pistol, and threatened to kill the conductor, and kept up the abuse of the conductor, using profane and vulgar language, and that the door between the smoking car and the ladies' coach was open, and he could be heard there.

Plaintiff asked the court to instruct the jury that if they believe from the evidence that the conductor refused to return the pass to plaintiff, claiming that he did not have it, and while plaintiff was insisting that he did have it the conductor called plaintiff a liar, or a damned liar, and plaintiff, smarting under the insult, struck the conductor, and the conductor then telegraphed ahead, and had plaintiff taken from the train and put under arrest, when plaintiff was making no disturbance, the action of the conductor in insulting plaintiff and ejecting him was wrongful, and the jury should find for the plaintiff. The court modified this instruction by adding, "unless they further believe from the evidence that the conduct of the plaintiff was such as to justify the actions of the conductor."

The court refused to instruct the jury, for plaintiff, that it was the duty of defendant to return the fare to plaintiff from the point where he was ejected to Memphis, regardless of whether he had a right to recover other damages or not.

The court instructed the jury, for defendant, that if they believed from the evidence that plaintiff was a passenger upon defendant's train, and that he was guilty of disorderly conduct in cursing and abusing the conductor, or had a pistol, and was threatening the life of the conductor, or used obscene, vulgar, and profane language on said train, the conductor had a right to eject him, using only such force as was necessary to accomplish his removal; that the conductor had a right to resist any assault made upon him, and to defend himself, and, if plaintiff assaulted him, he had a right to resist such assault by using such force as was necessary to protect himself. It also instructed the jury that, if they believed from the evidence that the conduct of plaintiff was such as required his removal from the

train, the conductor was not bound to return to him the money paid for his fare to Memphis, before such removal.

Plaintiff excepted to the giving of these instructions, and to the modification of his instruction, and the refusal of the instruction above mentioned as having been refused. Plaintiff's motion for a new trial was overruled.

*W. V. Sullivan,* for appellant.

The conductor was in fault, from the inception of the difficulty, and his conduct made the company liable.

All passengers who have paid their fare, as appellant had done, have the right to be civilly and politely treated, and protected, for that matter, from insult while on the train.

Even if appellant was in the wrong, that did not give the right to put him off the train, much less did it give the right to put him in jail, or deliver him over to the officers to be dealt with as a criminal.

The very act of the conductor in wiring, directing his release from custody, was a confession of his wrongful conduct.

Even if the conductor had a right to put appellant off the train, still he had no right to put him in jail, and surely his money should have been returned.

The instructions given for defendant and refused for plaintiff were a complete perversion of the law. The case should be reversed.    55 Ohio St. Rep., 589; s. c., 60 Am. St. Rep., 718.

*J. W. Buchanan,* for appellee.

Under the testimony, the conductor, under § 3563, Code 1892, had a right to stop the train and put appellant off, or wait until he reached the next stop and eject him himself, or have a peace officer to do so.

The conduct of appellant was not only dangerous to the conductor, but to every passenger upon the train; besides, a man who would use the language that appellant used on that occasion is not fit to associate with decent people on a train or elsewhere.

We have been unable to find any authority that supports appellant's contentions. The statute upon which the conductor acted, authorized him to stop at any point on the line of road and, if necessary, to remove appellant, and certainly it did not contemplate that he should figure out the exact amount that might be due the party removed before he could act in the matter. The case was fairly submitted to the jury on the testimony and charges of the court, and the jury from the testimony could not rightfully have decided otherwise, and the verdict of the jury ought not to be disturbed.

TRULY, J., delivered the opinion of the court.

The jury, by their verdict, have certified that the facts existed as detailed by the witnesses introduced by the appellee. Accepting that version as true, the action of the conductor was not only warranted, but commendable. The appellant had conducted himself in a most outrageous manner, indulging in vulgar, profane, and obscene language in the presence of gentlemen and the hearing of ladies; and this, too, according to the testimony, in the course of an altercation in which he was himself the aggressor. Under these circumstances, the conductor was fully empowered, under § 3563, Code 1892, to have appellant ejected from the train, and, if necessary for the protection of himself or his passengers from assault or insult, it was his duty to do so. It is true, as stated by appellant in his testimony in the court below, that the rules require the conductor to be courteous to passengers; but this is a reciprocal obligation, and neither can wantonly violate it with impunity. A conductor in charge of a passenger train is a conservator of the peace, under the law, charged with the duty of preserving order and protecting the passengers upon his train. It is his duty to protect his passengers not only from assault, but from insult, and from blasphemy, obscenity, and unseemly conduct. A conductor has an equal right with private citizens to defend himself

from unprovoked assault, and to resent gross and wanton in-sult.

We find no error prejudicial to appellant in the rulings or in-structions of the court below. Appellant did not, at the time of his ejection from the train, request the return of the unused part of his fare, nor is this counted on in the declaration.

*We approve the finding of the jury on the facts, and the judgment is affirmed.*